# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT A. DAVIES,** | **Civil Action No. 19-12194 (KMW)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **JOHN POWELL, et al.,** | |
| **Respondents.** | |

**WILLIAMS, DISTRICT JUDGE**

Petitioner Robert A. Davies ("Petitioner") is a state prisoner confined at South Woods State Prison in Bridgeton, New Jersey.  He is proceeding *pro se* with an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 7, Petition).  For the reasons expressed below, the Court denies the Petition and also denies a certificate of appealability.

## I.  BACKGROUND

The New Jersey Superior Court, Appellate Division provided the following factual summary on direct appeal:[1]

> On the day in question, Chavez and three of his co-workers—Mr. Torres, Mr. Gonzalez and Mr. Vu—left work at a restaurant shortly after 1:00 a.m. and stopped at a nearby bar intending to share a cab later.  All of them but Vu, who was underage and waited outside, went into the bar.  By Chavez's account, he and his co-workers were there about forty minutes before he went to the restroom. [Petitioner] and a Mexican Chavez did not know were inside. [Petitioner] asked Chavez if he was from Mexico, and Chavez told him he was.  [Petitioner] told Chavez that even though Chavez spoke

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

English, this was not his country and he should leave.  As Chavez left the restroom, [Petitioner] called him an "asshole."

Admittedly angry, Chavez told Gonzalez and complained to the bar's cook, Mr. Oblea, about [Petitioner's] remarks. According to Oblea, Chavez told him that [Petitioner] had said something "racist" and asked Oblea to have [Petitioner] kicked out of the bar.  Oblea pointed [Petitioner] out to another employee, and when he did, [Petitioner] left through the bar's back door.  Gonzalez and Torres left through the same door, according to them, to wait for a cab. [Petitioner] walked outside from the rear of the bar and around to the front, and Gonzalez and Torres took the same route.  Gonzalez was talking on his cellphone as he walked.

When [Petitioner] reached and walked by the front of the bar, he passed Chavez without incident.  By Chavez's account, he was still there because he was waiting for a cab.  When Gonzalez arrived, he pointed [Petitioner] out to Chavez.   Chavez then followed [Petitioner]. When Chavez reached [Petitioner], he punched him in the face with enough force to cause [Petitioner] to fall to the ground on his hands and knees.  [Petitioner's] hat and eyeglasses fell off and he had a bleeding cut near his eye.  Nevertheless, [Petitioner] was able to get up.  When he did, he pursued Chavez, who had turned around and was walking back toward the bar.  Gonzalez, who had walked on the opposite side of the street following Chavez out of curiosity and thinking a fight was probable, saw Chavez punch [Petitioner] and [Petitioner's] fall and subsequent pursuit of Chavez.

Gonzalez yelled to Chavez, warning that [Petitioner] was right behind him.  According to Gonzalez, [Petitioner] was reaching to his right side as he pursued Chavez.  Torres also saw [Petitioner] following Chavez, and by his account [Petitioner's] hand was near or in his waistband.  In response to the warning from Gonzalez, Chavez started running.

As Chavez ran away, he passed Mr. Ulrich.  Ulrich, who had been in an outdoor area of the bar, was at his car.  As Chavez passed Ulrich, Chavez was shaking his head and saying he had to catch a bus.

Meanwhile Gonzalez, still near the place where Chavez punched [Petitioner], noticed Ritch. Gonzalez described Ritch as a light-skinned man whom Gonzalez thought might be an African American.  According to Gonzalez, Ritch ran across the street and after [Petitioner]. Ritch was running "really fast" and Gonzalez,

Torres and Vu followed him.  Gonzalez saw Ritch catch up to [Petitioner] and touch his left shoulder.

According to Gonzalez's testimony, when [Petitioner] turned in response to Ritch's touch, Ritch put his hands up and said, "I'm just trying to help." Gonzalez's testimony about the timing of Ritch's gesture and remark deviated from two prior statements he had given to the police, and [Petitioner] used those statements to impeach Gonzalez.  In one of the statements, Gonzalez did not mention Ritch's profession or demonstration of benign intent, and in the other statement, he indicated that Ritch announced and demonstrated his intention after [Petitioner] punched him.

Ulrich was still at his car in the place where Chavez had passed when he heard Ritch say he was just trying to help and turned to see [Petitioner] punching Ritch.  Torres saw Ritch raise his hands before [Petitioner] came around with his right arm and hit Ritch in the stomach.  Gonzalez did not see [Petitioner] use a knife and, based on the sound when [Petitioner] landed the blow, surmised that [Petitioner] punched Ritch.  After striking Ritch, [Petitioner] ran after Chavez.

Gonzalez went to Ritch's side, and Ritch told Gonzalez that he thought he had been stabbed.  At that point, Gonzalez noticed the blood confirming that Ritch was right.  The knife penetrated a rib and the right ventricle of Ritch's heart, and it was the cause of his death.  The knife was never found.

After [Petitioner] resumed his pursuit of Chavez, Chavez ran by a young man who asked him what was going on.  Chavez told him he had to catch a bus.  After Chavez passed, [Petitioner], breathing heavily, looking exhausted and having a wound on his head, approached the same man, who asked [Petitioner] what was going on.  [Petitioner] said, "a Mexican snuck me."

*State v. Davies*, No. A-5986-10T4, 2014 WL 6474519, at *2-3 (N.J. Super Ct. App. Div. Nov. 20, 2014.)

Petitioner was indicted and charged with first degree murder, N.J.S.A. § 2C:11-3a(1)(2) (count one); first-degree aggravated manslaughter, N.J.S.A. § 2C:11-4a (count two); second-degree manslaughter, N.J.S.A § 2C:11-4b (count three); third-degree possession of weapon for unlawful purposes, N.J.S.A. § 2C:39-4d (count four); fourth-degree unlawful possession of a

weapon, N.J.S.A. § 2C:39-5d (count five); and fourth degree possession of a weapon by a convicted person, N.J.S.A. § 2C:39-7 (count six.) (*See* ECF No. 11-2, at 1-7.)[2] On February 16, 2011, Petitioner was convicted of second-degree manslaughter, third-degree possession of a weapon for unlawful purpose, and fourth-degree possession of a weapon by a convicted person (counts three, four, and six.) *Davies*, 2014 WL 6474519, at *1. The jury acquitted Petitioner of first-degree aggravated manslaughter, second-degree manslaughter, and fourth-degree unlawful possession of a weapon (counts one, two, and five.) *See id.*

Prior to sentencing the court determined Petitioner was subject to an extended-term sentence on two grounds, a mandatory extended term for manslaughter pursuant to N.J.S.A. § 2C:43-6.4e, and a discretionary term as a persistent offender pursuant to N.J.S.A. § 2C:44-3a. *Id.*, at *1. The court sentenced Petitioner to a mandatory extended term of twenty years imprisonment for manslaughter, subject to an eighty-five percent parole ineligibility period under the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. (*See* ECF No. 11-44, at 5.) The court also sentenced him to five years' imprisonment with thirty months of parole ineligibility for possession of weapon for unlawful purposes, to run concurrent to a sentence of eighteen months' imprisonment with nine months of parole ineligibility for possession of a weapon by a convicted person. (*See id.*) Petitioner's concurrent sentences for possession of weapon for unlawful purposes and possession of a weapon by a convicted person were to run consecutively to his manslaughter sentence. (*See id.*)

On August 5, 2011, Petitioner filed a notice of appeal with the Appellate Division. (ECF No. 11-29). On November 20, 2014, the Appellate Division affirmed Petitioner's convictions, but

---

[2] Pin cites to ECF No. 11-2 through 11-53 are to the pagination automatically generated by the CM/ECF.

remanded for resentencing.  *Davies*, 2014 WL 6474519. On April 30, 2015, the New Jersey Supreme Court denied Petitioner's petition for certification.  (ECF No. 11-35.)

At resentencing, the judge re-imposed the mandatory extended term of twenty-years' imprisonment for manslaughter pursuant to N.J.S.A. 2C:43-6.4e, subject to the NERA eighty-five percent parole ineligibility period, merged the manslaughter count with the possession of weapon for unlawful purposes count, and imposed a flat one-year term of imprisonment for possession of a weapon by a convicted person to run concurrently with the sentence imposed for manslaughter. (ECF No. 11-3, at 1.) The New Jersey Superior Court subsequently affirmed Petitioner's sentence on May 16, 2016.  (ECF No. 11-37.)

Petitioner filed a *pro se* post-conviction relief ("PCR") petition.  (ECF No. 11-38.) On November 18, 2016, the PCR court denied his petition. (*See* ECF No. 11-44.)  Petitioner appealed, and the Appellate Division affirmed the denial on July 20, 2018.  *State v. Davies*, No. A-1965-16T2, 2018 WL 3484106 (N.J. Super Ct. App. Div. July 20. 2018.)  The New Jersey Supreme Court then denied his petition for certification.  (ECF No. 11-52.)

Petitioner filed his original habeas petition on May 3, 2019.  (ECF No. 1.)  Petitioner then filed the instant amended habeas petition on July 12, 2019.  (ECF No. 7.)  Respondents filed an answer.  (ECF No. 11.)  Petitioner filed a reply.  (ECF No. 13.)

## II.  STANDARDS OF REVIEW

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Habeas

petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## III. ANALYSIS

### A. Ground One: Prosecutor's Summation Remarks Regarding Mario Chavez

In ground one, Petitioner alleges he "was denied a fair trial when the prosecutor argued in summation that Petitioner was guilty of intending to kill Mr. Chavez, rather than the unintended victim repeatedly identified by the state in the grand jury proceeding and the indictment." (ECF

No. 7, at 26.)  Ground one has three subclaims.[3]  In ground one, subclaim one, Petitioner claims the trial court erred in denying the prosecutor's request to charge "reckless or negligent injury or risk of injury to innocent persons pursuant to N.J.S.A. 2C:3-9c," because once the "prosecutor argued in summation that Petitioner intended to kill Chavez or any other Mexican, the court was clearly obliged to charge the jury pursuant to N.J.S.A. 2C:3-9c."  (*Id.*)  In ground one, subclaim two, Petitioner argues that because the state advanced different theories of culpability based on different actions and different victims, "the trial court should have instructed the jurors that to convict they had to unanimously agree as to which specific criminal acts were committed." (*Id.*) In ground one, subclaim, three, Petitioner argues the "prosecutor's remarks in summation deprived Petitioner of his right to indictment by grand jury and due process."  (*Id.*)

Petitioner does not specify which remarks made by the prosecutor in summation amounted to an argument that Mr. Chavez was the intended victim and Mr. Ritch was an innocent unintended victim.  However, Petitioner supported this claim before the Appellate Division with the following:

> In summation, however, the prosecutor argued that [Petitioner] intended to use the knife against a person not named in the indictment, Mario Chavez, and further, that [Petitioner] intended to kill Chavez or any other Mexican, but mistakenly killed Ritch thinking he was Mexican.  The prosecutor stated: "Bob Davies was going to kill a Mexican that night and that guy was close enough. Probably did think this was a Mexican."

(ECF No. 11-30, at 26-27 (citing 22T 74-23 to 25.))

### 1.  Ground one, subclaim one: Failure to charge on N.J.S.A. 2C:3-9c

In ground one, subclaim one, Petitioner claims the trial court erred in denying the prosecutor's request to charge "reckless or negligent injury or risk of injury to innocent persons pursuant to N.J.S.A. 2C:3-9c."  (ECF No. 7, at 26.)  The Appellate Division on direct appeal

---

[3] The court has renumbered these arguments for clarity purposes.

reviewed Petitioner's claim that the trial court erred in not instructing the jury on N.J.S.A. 2C:3-9c and found it meritless. *Davies*, 2014 WL 6474519, at *8-9.

Relevant here, the Court notes that prior to trial Petitioner moved to represent himself. (*See* ECF No. 11-5.) Following a hearing, the trial court granted Petitioner's motion to proceed *pro se* and appointed defense counsel as standby counsel. (*See id.*) During opening statements, Petitioner remarked that he is a "big white guy" who was minding his own business, while Mario Chavez and his friend were "huddled off" in Maynards Cafe "planning in out." (ECF No. 11-14, N.T. 1/26/11, at 55:20-56:1.) Petitioner stated that Hector Gonzalez and Hector Torres followed Petitioner out of Maynards Cafe and were on a cell phone "planning in out. Now it's in place. The attack is on." (*Id.*, at 58:1-8.) Petition submitted that after Mario Chaves punched "big white guy," the "big white guy" chases and "is trying to catch Mario Chavez," and "all other Mexicans take off after the big white guy." (*Id.*, at 62:19-63:1.) Petitioner stated that "Lavern Paul Ritch interject[ed] himself into the assault" and you have several Mexicans and "one very big light skinned black guy . . . who's running stride for stride with the Mexicans," chasing "big white guy" and there is no evidence that Petitioner knew Mr. Ritch had interjected himself into the assault. (*Id.*, at 63:25 to 64:11.)

Prior to the conclusion of the prosecution's case in chief, Petitioner chose to have standby counsel represent him, citing mental and physical fatigue. (*See* ECF No. 11-22, N.T. 2/8/11, at 97:14-16, 104:14 to 105:3.) At that point, defense counsel took over and represented Petitioner for the remainder of the trial.

The Appellate Division on direct appeal, supplied the following background:

> In summation, the assistant prosecutor submitted that [Petitioner] murdered Ritch, because he was angry about having been ejected from the bar at the behest of a Mexican and wanted to kill Chavez or another Mexican. Defense counsel urged the jurors to consider

> the circumstances: [Petitioner] had just been knocked down and
> wounded by a punch from Chavez; was exhausted from running; and
> Ritch and Chavez's companions were running behind and toward
> him. [Petitioner's] attorney contended that [Petitioner] could not
> have known who was behind him or what their intentions were.
> Defense counsel submitted that [Petitioner] was acting in self-
> defense and in reasonable fear of death or serious bodily injury when
> he used his knife to stab Ritch after Ritch touched his shoulder.

*Davies*, 2014 WL 6474519, at *4.

Additionally, during the charge conference, the prosecution requested a N.J.S.A. 2C:3-9c

instruction regarding the use of force against an innocent bystander, arguing "[c]ouldn't the fact-

finder believe that this [Petitioner] [] did not perceive the victim as part of a conspiracy of

aggressors against him and if it did so, wouldn't he fall under the Ruber Code by standards of third

party?" (ECF No. 11-24, N.T. 2/14/11, at 42:21-25.) Because N.J.S.A. 2C:3-9c applies to reckless

conduct, the prosecution noted that the instruction would apply to count two, aggravated

manslaughter, and count three, manslaughter. (*Id.*, at 45:12-16.) Defense counsel opposed the

instruction, arguing

> I'm not - - the Defense is not alleging that it had the right and
> intended to use force upon one person, but mistakenly used it upon
> another. In other words, to put it in a factual context here in regard
> to self-defense, we are not alleging that we intended and had to legal
> right. We had the legal right at the time, immediate time to only use
> self-defense on Mario Chavez, but not against no one else and that
> we intended to use it against Mario Chavez, but that mistakenly in
> was used against someone else. That's not the argument th[at] we
> are asserting. That's not the reason why we're asking for the self-
> defense charge.
>
> . . .
>
> The state has charged in using force against victim one, [Petitioner]
> recklessly or negligently injury or created a risk of injury to victim
> two, an innocent person. We're not making that argument. It hasn't
> been made throughout the course of this case, Judge, by the Defense.

(*Id.*, at 40:17 to 42:1.)  The trial court denied the states' request for the charge, noting that because Petitioner was not charged with any crime against Mario Chavez, there was only one victim in the case, Mr. Ritch, as far as the law and the indictment were concerned.  (*Id.*, at 48:2 to 49:4.)

Although defense counsel objected to the jury instruction regarding innocent third party, Petitioner claimed on direct appeal that the trial court erred in not giving the instruction.

The Appellate Division reviewed Petitioner's claim and found the following:

> Appellate counsel and [Petitioner] argue that the evidence in this case required a special instruction on N.J.S.A. 2C:3–9c.  This statutory provision actually operates to narrow the scope of self-defense. N.J.S.A. 2C:3–9c provides:
>
> > When the actor is justified under sections 2C:3–3 to 2C:3–8 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons.
>
> In effect, this provision makes it clear that even where a defendant's use of force against the aggressor would be wholly justified, the defense is not available to a defendant who has recklessly or negligently injured a person other than the one posing the threat of harm.  *Ibid.*  In short, delivery of an instruction on this point of law could not have redounded to [Petitioner's] benefit.
>
> Omission of an instruction on this point of law was entirely proper where the question was whether [Petitioner] reasonably believed that the person whom he stabbed posed an immediate threat of serious bodily harm that he did not know he could avoid by retreat. In any event, [Petitioner] who was acquitted of murder and aggravated manslaughter and convicted of reckless manslaughter, could not have been prejudiced by its omission. The identity of the person posing the threat was immaterial to the defense.

*Davies*, 2014 WL 6474519, at *9.

That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief."  *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62,

11

71-72 (1991)), cert. denied, 534 U.S. 919 (2001).   A petitioner can therefore only show an entitlement to habeas relief based upon allegedly inadequate jury instructions where the petitioner proves that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."   *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).   That a challenged instruction was "undesirable, erroneous, or even universally condemned," is insufficient to warrant habeas relief; a petitioner can only prevail on such a claim by showing that the instruction rendered his trial fundamentally unfair.   *Id.*   Additionally, courts may not judge the instruction in isolation, but must consider the instruction "in the context of the instructions as a whole and the trial record."   *Estelle*, 502 U.S. at 72.

Where the error is the omission of an instruction, a petitioner's burden is "especially heavy" because an omission is "less likely to be prejudicial than a misstatement of the law."   *See id.* at 155.   In that case, a petitioner must demonstrate that the omission was so "inconsistent with the rudimentary demands of fair procedure" as to result in a miscarriage of justice.   *See Smith v. Arvonio*, Civ. No. 93-25, 1994 WL 327123, *3 (D.N.J. June 24, 1994) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Petitioner has failed to show, and the record does not support, that the trial court's decision to not instruct the jury on reckless or negligent injury or risk of injury to innocent persons pursuant to N.J.S.A. 2C:3-9c rendered Petitioner's trial fundamentally unfair. As explained above, Petitioner's opening statement to the jury submitted that Petitioner stabbed Mr. Ritch in self-defense because Petitioner did not know he had "interjected himself into the assault" as he was "running stride for stride with the Mexicans," chasing Petitioner. (ECF No. 11-14, N.T. 1/26/11, at 63:25 to 64:11.)  In closing, defense counsel argued self-defense, submitting that Petitioner had no way of knowing that it was Mr. Ritch that caught him or that he had good intentions.  Defense

counsel argued "a person of ordinary prudence and intelligence could not have known that." (ECF No. 11-25, N.T. 2/15/11, at 28:10 to 29:5.) Additionally, defense counsel objected to the proposed charge, arguing that Petitioner's defense was self-defense regarding Mr. Ritch and not that he had a right to use self-defense against Mario Chavez and mistakenly used force against Mr. Ritch. (*Id.*, at 40:17 to 42:1.) Petitioner was not charged with any crime regarding Mario Chavez, Mario Chavez was not presented to the jury as a "victim," nor did Petitioner argue that he mistakenly stabbed Mr. Ritch, while attempting to use force against Mario Chavez in self-defense.

The state court ruled a charge regarding reckless or negligent injury or risk of injury to innocent persons pursuant to N.J.S.A. 2C:3-9c was not appropriate and charged the jury on self-defense. The Appellate Division explained that N.J.S.A. 2C:3-9c actually operates to narrow the scope of self-defense. *Davies*, 2014 WL 6474519, at *9. The Appellate Division ruled that "[o]mission of an instruction on this point of law was entirely proper where the question was whether [Petitioner] reasonably believed that the person whom he stabbed posed an immediate threat of serious bodily harm that he did not know he could avoid by retreat." *Id*. The Appellate Division's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law. Given that Petitioner was only charged with a crime against Mr. Ritch, and he asserted self-defense regarding Mr. Ritch, the state court's decision to not charge on negligent injury to an innocent person did not render Petitioner's trial fundamentally unfair and was not "inconsistent with the rudimentary demands of fair procedure" as to result in a miscarriage of justice. *Hill*, 368 U.S. at 428; *see Duncan*, 256 F.3d at. 203. Petitioner is not entitled to habeas relief on this claim.

**2.  Ground one, subclaims two: Failure to charge regarding jury unanimity**

Petitioner argues in the second portion of his first ground for relief that because the state argued in summation that Petitioner intended to kill Mario Chavez, it presented different theories of culpability based on different actions and different victims.  (ECF No. 7, at 26.)  Therefore, Petitioner argues the trial court erred in not instructing the jurors that to convict they had to unanimously agree as to which specific criminal acts were committed.  (*Id.*)

The Appellate Division denied this claim as meritless for the following reasons:

> Based on an argument made in the State's summation and an instruction of transferred intent included in the jury instruction on murder only, appellate counsel argues that the judge erred in failing to include a special charge requiring unanimity.  A special instruction on unanimity, by which we mean one beyond the general model charge covering the point that was given in this case, is required "'in cases where there is a danger of a fragmented verdict.'"  *State v. Parker*, 124 N.J. 628, 637 (1991) (quoting *United States v. North*, 910 F.2d 843, 875 (D.C.Cir.) (North I), vacated in part and rev'd in part on rehearing, 920 F.2d 940 (D.C.Cir.1990) (North II), cert. denied, 500 U.S. 941, 111 S.Ct. 2235, 114 L. Ed.2d 477 (1991)), cert. denied, 503 U.S. 939, 112 S.Ct. 1483, 117 L. Ed.2d 625 (1992).  Such a possibility exists, for example, where "the state [has] proffered two entirely distinct factual scenarios to support" a conviction.  *State v. Frisby*, 174 N.J. 583, 599 (2002).
>
> This argument is premised on passages in the assistant prosecutor's argument.  Appellate counsel relies on portions of the prosecutor's summation that he summarizes as follows:
>
> > [Petitioner] intended to use the knife against a person not named in the indictment, Chavez, and further, that [Petitioner] intended to kill Chavez or any other Mexican, but mistakenly killed Ritch thinking he was Mexican.  The prosecutor stated: "Bob Davies was going to kill a Mexican that night and that guy was close enough.  Probably did think this was a Mexican."
>
> The foregoing comments have nothing to do with the crimes that Petitioner argues called for an unanimity instruction—they pertained to murder.  With respect to possession of the knife with an

> unlawful purpose and manslaughter, the State's only theory concerned Ritch.  In instructing the jury on possession of the knife with an unlawful purpose, the judge gave the general broad charge on that crime, but in discussing the "unlawful purpose element" the judge directed: "In this case the State contends that [Petitioner's] unlawful purpose in possessing the weapon was to cause the death of Lavern Ritch."  Moreover, in instructing the jury on manslaughter the judge read the charge returned by the grand jurors which charged nothing other than that [Petitioner] recklessly caused the death of Ritch.
>
> Given the instructions and the manslaughter charged, there was no need or reason for a special charge on unanimity. The arguments warrant no additional discussion. *R.* 2:11–3(e)(2).

*Davies*, 2014 WL 6474519, at *12.

As previously noted, review of a jury charge requires the court to determine whether the instruction "so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughton*, 414 U.S. 141, 147 (1973); *see also Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) ("Habeas relief for a due process violation concerning an absent or defective jury instruction is available only when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness.")  An error in the jury instructions is not ground for habeas relief if the error is harmless.  *See Pagliaccetti v. Kerestes*, 581 F. App'x 134, 136 (3d Cir. 2014) (citing *Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996)).  An error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

A review of the prosecutor's remark in the context of the overall summation shows the Appellate Division was correct that the prosecutor was making an argument regarding the murder. Additionally, the prosecutor was not arguing a separate theory of culpability regarding Mario Chavez, but rather was arguing only that Petitioner intended to kill Mr. Ritch. The prosecutor did not argue that Petitioner mistakenly killed Mr. Ritch.  The prosecutor argued as follows:

But this whole thing about the provocation, he was provoked into it, it's important to look to see what Bob Davies' state of mind is.  It's relevant not only to that, but the other charges, too. You have to determine did he act with intent or was it just reckless?  I submit to you that you know stabbing in the heart is an intentional act.  If it's intentional and did it knowingly and purposely.  That's murder.

In making that consideration, you can consider the weapon that was used. You can consider the nature of that wound, the location.  That all goes to intent.  You just want to maim somebody, you don't stab them in the heart.  There's other ways to do that. Well, did he reasonably believe that was a Mexican chasing him and not that that would make it any better.  That's no defense if you think you're killing a person who is in one group and the person is actually in another group.  You intend to kill that person, that's what counts.  It's not that they're affiliated with.  Bob Davies was going to kill a Mexican that night and that guy was close enough.  Probably did think this was a Mexican.

(ECF No. 11-25, N.T. 2/15/11, at 74:4-25.)  Prior to those remarks, the prosecutor also argued the following:

You know, probably the most chilling testimony in this case ,was from Scott Bonar.  What he said was he sees the guy.  The guy stops running and he says to him, that Mexican snuck me.  And he's talking about the guys chasing him, Mario Chavez, but what is so bone chilling about that is that he had just taken somebody's life seconds ago.  He had just killed Lavern Ritch and what's his state of mind? What's his focus? He's talking about the Mexican that hit him and got away.  That takes a special human being to exhibit that kind of [mindset].  So focused is he in getting Mario Chavez, that Lavern Ritch got in the way.  He killed him just to get him out of his way so he can get the target of his real rage.  He put the knife into the heart of Lavern Ritch who didn't do anything to him.  Can you imagine what he would have done to Mario Chavez?

(*Id.*, at 57:6-22.)

The state courts' decision is consistent with federal law and a reasonable determination of the facts.  The Appellate Division noted "with respect to possession of the knife with an unlawful purpose and manslaughter, the State's only theory concerned Ritch." *Davies*, 2014 WL 6474519, at *12.  The Appellate Division further explained that the trial court's charge on reckless

16

manslaughter and possession of a weapon for an unlawful purpose referred only to the victim, Mr. Ritch. *Id.* Because the only argument presented to the jury was regarding Mr. Ritch, there was no alternative theory of culpability presented and an unanimity charge was not necessary for those two charges.

Additionally, regarding Petitioner's murder charge, the Court finds first that the state was not arguing that Petitioner intended to kill Mario Chavez and accidentally killed Mr. Ritch. Rather, the prosecutor very clearly argued that although Petitioner set out to kill Mario Chavez, when he encountered Mr. Ritch, he intentionally killed him. Because the state did not present a conflicting theory of the case involving a different victim, an unanimity charge was also not necessary on the murder charge. However, even if the Court was to assume for arguments sake that the jury instruction was necessary on the murder charge, any error is harmless in light of the fact that the jury acquitted Petitioner of murder. *Brecht*, 507 U.S. at 637 (finding a charge error harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict.") Petitioner has not shown that the lack of unanimity charge infected his entire trial with unfairness. *Albrecht*, 485 F.3d at 129. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 3.  Ground one, subclaim three: Right to indictment by grand jury

Petitioner argues in subclaim three of his first ground for relief that the prosecutor's remarks discussed above deprived Petitioner of his right to indictment by grand jury and due process. (ECF No. 7, at 26.)

The Appellate Division reviewed this claim on direct appeal and found it meritless. *Davies*, 2014 WL 6474519, at *12. The state court found:

> [Petitioner's] claimed entitlement to relief based on violation of his right to indictment is based on the prosecutor's argument in summation and an instruction on transferred intent that was limited to the murder charge. The reasons for our rejection of this claim are

the same as those we have previously given for concluding that a charge on unanimity was not required.  The jury instructions simply did not permit a conviction based on [Petitioner's] killing or possessing a knife with intent to kill anyone other than Ritch.

*Id.*

Petitioner's claim essentially alleges that the State improperly constructively amended the indictment.  *See, e.g, United States v. McKee*, 506 F.3d 225, 229 (3d Cir.2007) (an indictment is "constructively amended when evidence, arguments, or the district court's jury instructions effectively amends the indictment by broadening the possible bases for conviction from that which appeared in the indictment").  Initially, the instant claim fails to allege an issue cognizable on federal habeas review.  A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  As determined by the United States Supreme Court the Fifth Amendment right to a grand jury indictment does not apply to state criminal prosecutions. *Apprendi v. New Jersey*, 530 U.S. 266, 272 (1994); *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (noting that the Fourteenth Amendment's Due Process Clause has not been construed as incorporating the Fifth Amendment's right to indictment by a grand jury). Thus, "the legality of an amendment to an indictment is primarily a matter of state law." *United States ex. rel Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975). Therefore, to the extent Petitioner claims the state constructively amended his original indictment during trial, the claim is dismissed as noncognizable on federal habeas review.

To the extent Petitioner argues he was denied due process when the state allegedly constructively amended the indictment during summation, this claim is cognizable on federal habeas review and is meritless.  The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause

of the accusation." U.S. Const. amend VI.  This right applies to the states through the Fourteenth Amendment.  *In re Oliver*, 333 U.S. 257 (1948). As explained at length above, the prosecutor's remarks in summation only argued to the jury that Petitioner intentionally killed Mr. Ritch and the trial court only instructed the jury regarding the victim, Mr. Ritch.  The prosecutor did not constructively amend the indictment to add a charge regarding Mario Chavez.  Petitioner cannot demonstrate the state court's adjudication was an unreasonable application of clearly established federal law.  Thus, Petitioner's claim is denied.

**B.  Ground Two: Insufficient Jury Instruction on Failure to Retreat**

Petitioner argues in his second ground for relief that the "trial court's jury instruction on the 'failure to retreat' portion of the self-defense charge failed to address the specific facts of the Petitioner's case, which precluded the jury from properly considering self-defense and denied Petitioner of a fair trial."  (ECF No. 7, at 28.)  Petitioner claims that "due to the complex nature of the self-defense charge and the unusual facts of this case, the judge's failure to apply the facts of the case to the law had the clear capacity to mislead the jury."  (*Id.*)  Finally, Petitioner argues that he had no "duty to retreat" before using "protective force," as opposed to the "duty to retreat" before using "deadly force."  (*Id.*)

The Appellate Division denied this claim on direct appeal as follows:

> As the State argues and appellate counsel acknowledges, instructions must be tailored with reference to the evidence if a "statement of the relevant law, when divorced from the facts" is "potentially confusing or misleading to the jury."  *State v. Robinson*, 165 N.J. 32, 42 (2000).  In this case, no basis for such confusion is apparent.
>
> When [Petitioner] resorted to the use of deadly force, Chavez, the man who had punched him in the face, had run away; Ritch and Chavez's companions had pursued [Petitioner]; and Ritch had caught up to [Petitioner] and touched his shoulder.  In addition, there was conflicting testimony as to whether Ritch announced his intent

19

to help [Petitioner] before or after [Petitioner] stabbed him. The retreat rule was implicated.

Self-defense is available as a defense to a crime involving the "use of force upon or toward another person . . . when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3–4a. But "[t]he use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm." N.J.S.A. 2C:3–4b(2).

The retreat rule is one of several limitations on that broad license to defend oneself with "deadly force" against "death or serious bodily harm." *Ibid.* It limits the use of deadly force outside, but not inside, the defender's dwelling unless one using deadly force in his own dwelling was the initial aggressor, in which case the retreat rule applies. N.J.S.A. 2C:3–4b(2)(b)(i). Nor does the retreat rule apply to require an officer, a person assisting an officer or a person justified in making an arrest or preventing an escape to retreat by abandoning that endeavor. N.J.S.A. 2C:3–4b(2)(b)(ii).

The application of the retreat rule to the foregoing evidence was neither confusing nor complex. The events took place in a public place and no exemptions from the rule applied. If defendant reasonably believed that use of deadly force was immediately necessary to protect himself against what he reasonably believed was a threat of "death or serious bodily harm," he did not have to retreat unless he knew he could avoid death or serious bodily injury "with complete safety by retreating." N.J.S.A. 2C:3–4b(2)(b).

The pertinent facts were obvious, and defense counsel argued them well in his closing. [Petitioner's] appellate counsel contends that the judge "should have charged the jury that they must consider the fact that [Petitioner] knew that Chavez, the man he was chasing, was not alone; that he had friends." He further claims that the judge "should also have instructed the jury that [Petitioner] had run over 220 yards (or about 670 feet) and was out of breath when approached by Ritch." As phrased by appellate counsel, the proffered explanation contains conclusions about the facts and the credibility of the witnesses that the jury had to resolve, not the judge. Moreover, the pertinence of the underlying facts permitting the inferences appellate counsel suggests was so apparent that the judge's decision to refrain from bringing those facts to the attention of the jurors was not error. The evidence indicating that Ritch deemed it necessary to make his benign intention clear to defendant dramatically

> highlighted the ambiguity inherent in the circumstances of [Petitioner's] encounter with Ritch. On the arguments presented, we cannot conclude that the judge erred by not including a reference to the evidence in the instruction on the retreat rule.

*Davies*, 2014 WL 6474519, at *12.

The state court's holding was a reasonable application of established federal law based on a reasonable determination of the facts.  Although state law may very well require jury instructions to be tailored to the facts of a case under appropriate circumstances, there is no such requirement under federal law.  "Supreme Court precedent does not require [jury] instructions to relate the law to the facts." *Boretsky v. Ricci*, No. 09–0771, 2012 WL 664945, at *24 (D.N.J. Feb. 29, 2012) (citing *Montana v. Egelhoff*, 518 U.S. 37 (1996)).  "[D]ue process does not require [jury] instructions to explain the elements of [the offense] with reference to the facts of the case." *Ingram v. Hendricks*, No. 03–2850, 2005 WL 2807208, at *3 (D.N.J. Oct. 25, 2005); *see Richardson v. Ricci*, No. 10–4954, 2013 WL 3863994, at *14 (D.N.J. July 24, 2013) (failure to give jury instructions tailored to the facts of the case did not violate federal law).

While Petitioner's heading of his claim asserts that the jury instruction on duty to retreat violated his constitutional right to Due Process under the Sixth and Fourteenth Amendments, his claim does not identify any precedent or arguments supporting a constitutional violation.  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).  Instead, a habeas petitioner who challenges the sufficiency of state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Id.* Petitioner is not entitled to habeas relief on ground two because due process does not require the jury instructions to explain "duty to retreat" with reference to the facts of the case.

Additionally, the Court does not find that the trial court's instruction on duty to retreat and deadly forces versus non-deadly force violated due process. The Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997.) The trial court gave the following duty to retreat instruction relevant to self-defense:

> Deadly force is defined as force that the defendant uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm. By serious bodily harm, we mean an injury that creates a substantial risk of death for which causes or which causes serious disfigurement or which causes a protracted loss or impairment of any bodily member or organ began.
>
> . . .
>
> If you find that the defendant knew that he could avoid the necessity of using deadly force by retreating, provided that the defendant knew he could do so with complete safety, then the defense is not available to him. In your inquiry as to whether a defendant who resorted to deadly force knew that an opportunity to retreat with complete safety was available, the total circumstances, including the attendant excitement accompanying the situation must be considered.
>
> A person may also use non-deadly force in his own defense. If you find that this [Petitioner] did not use -- did use non-deadly force to defend himself, then you must determine whether that force was justified. The same reasonable belief standard that I explained to you when discussing deadly force applies here.
>
> . . .
>
> The same theory applies to the issue of retreat. Remember that the obligation of the defendant to retreat only arises if you find that the defendant resorts to the use of deadly force. If the defendant does not resort to the use of deadly force, one who is unlawfully attacked may hold his position and not retreat whether the attack upon him is by deadly force or some lesser force.

(ECF No. 11-25, N.T. 2/15/11, at, 107:14-21, 109:4-19, and 110:18-25.)

Petitioner argues that the facts show that he used "protective force" and not "deadly force", therefore, he did not have a duty to retreat, and the trial court failed to recognize the distinction and properly instruct on it.  (ECF No. 7, at 28, n.5.)  The trial court instructions explained the difference between deadly force and non-deadly force and explained that a defendant only has a duty to retreat if using deadly force.  The trial court recognized the distinction and properly instructed on it.  Having reviewed the record, the Court finds that Petitioner's claims regarding errors in the duty to retreat charge do not fall within the narrow circumstances that warrant habeas relief based on erroneous jury instructions.  As such, Petitioner has not shown that the state court's ruling was an unreasonable application of federal law and he is not entitled to federal habeas relief with respect to this claim.

### C.  Ground Three: Instructions on Lesser-Included Offenses, Causation, Unlawful Purpose, and Reasonable Belief

Petitioner raises two claims in his third ground for relief.  Petitioner first alleges that the trial judge erred in not instructing the jury on lesser-included offenses, such as assault and possessory offenses.  (ECF No. 29.)  Petitioner next claims the trial judge incorrectly instructed on causation, inference for an unlawful purpose, and reasonable belief.  (*Id.*)  The Court will address these arguments as separate claims.

### 1.  Lesser-included offenses

On direct appeal, the Appellate Division considered Petitioner's claim that the trial court erred in not instructing the jury on lesser-included offenses and explained "[a]bsent a request, an instruction on lesser offenses and defenses is not required unless the lesser offense or the defense is clearly indicated by the evidence."  *Davies*, 2014 WL 6474519, at *11 (citations omitted).  The court found lesser-included offenses was not clearly indicated by the evidence, noting "there was no evidence of any assault other than the one that caused Ritch's death."  *Id.*

Petitioner has failed to prove a due process violation regarding lesser-included offense. The Supreme Court has never recognized that due process mandates lesser included offense instructions in non-capital cases. *See Gilmore v. Taylor*, 508 U.S. 333, 342 (1993). Regardless, "due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982) (emphasis in original). Moreover, a trial court's finding as to whether the evidence at trial warranted an instruction is a finding of fact entitled to the Section 2254(d) presumption of correctness. *See Miller v. Fenton*, 474 U.S. 104, 112 (1985).

Here, Petitioner does not indicate what "possessory offenses" he believes the jury should have been charged on. Regarding instruction on the lesser-included offense of assault, the Appellate Division found the record did not support an instruction on assault. *Davies*, 2014 WL 6474519, at *11. Petitioner fails to submit any evidence from the record that would support a finding that the evidence required such an instruction. *Hopper*, 456 U.S. at 611. Petitioner simply asserts that lesser-included offense instructions were necessary. The state court findings are entitled to presumption of correctness here, and Petitioner has failed to rebut that presumption. *See Miller*, 474 U.S. at 112. Petitioner has failed to show a due process violation, and the Court will deny him habeas relief as to this portion of ground three.

## 2. Incorrect instruction on causation, inference for an unlawful purpose, and reasonable belief

Petitioner asserts that the trial court erred in instructing the jury regarding causation, unlawful purpose, and reasonable belief. (ECF No. 29.) The Court will address these allegations in turn.

24

### a. Causation

The Appellate Division considered Petitioner's claim that the jury was incorrectly charged on causation and found the trial court's error was harmless based on the following rationale

> [Petitioner] also contends, in Point I b, that the judge's charge on causation relevant to manslaughter was flawed.  [Petitioner] is correct that in referring the jurors to the charge on causation for murder, the judge mistakenly incorporated the instruction explaining causation where the offense requires proof that the defendant caused a result purposely or knowingly, N.J.S.A. 2C:2–3b, instead of causation where the offense requires proof the defendant caused the result recklessly or criminally negligently, N.J.S.A. 2C:2–3c.  But the effect of this error was to require the State to prove the more demanding requirements applicable to causation in murder cases. Accordingly, the error redounded to [Petitioner's] benefit and was not capable of prejudicing the outcome.

*Davies*, 2014 WL 6474519, at *11.

The Supreme Court has held that an error in a jury instruction is a "trial error," not a "structural error," meaning that it is subject to a harmless error analysis.  *California v. Roy*, 519 U.S. 2, 5 (1996).  An error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776). In determining whether there is harmless error, we examine the impact of the error on the trial as a whole.  *Yohn*, 76 F.3d at 523.

The trial court charged the jury on murder and gave the following instruction on causation as it applied to Petitioner's murder charge:

> Now, causation has a special meaning under the law.  To establish causation, the state must prove two elements, each beyond a reasonable doubt.
>
> First, that but/for [Petitioner's] conduct, Laverne Ritch would not have died.

> Second, Laverne Ritch's death must have been within the design or contemplation of [Petitioner.]  If not, it must involve the same kind of injury or harm as that design contemplated and must also be not too remote, too accidental in its occurrence or too dependent on another's volitional act to have a just bearing on [Petitioner's] liability or on the gravity of his offense.
>
> In other words, the state must prove, beyond a reasonable doubt, that Laverne Ritch's death was not unexpected or unusual that it would be unjust to find [Petitioner] guilty of murder.

(ECF No. 11-25, N.T. 2/15/11, at 95:11 to 96:2.)  However, when instructing the jury on the charges of aggravated manslaughter and reckless manslaughter the trial court instructed "causation has the same meaning that I just gave you."  (*Id.*, at 102:12-13 and 104:21-22.)  The Appellate Division found that this instruction was incorrect and the state's burden of proof on causation for aggravated manslaughter and reckless manslaughter was that Petitioner caused the result recklessly or criminally negligently.  *Davies*, 2014 WL 6474519, at *11.  The state was not required to prove that Petitioner caused the result purposefully and knowingly as required for murder.  *Id.*

The trial court's causation instruction on aggravated manslaughter and reckless manslaughter held the state to a higher burden of proof than required.  As such, Petitioner has failed to show that the incorrect jury instructions infected his trial resulting in a conviction that violates due process.  *See Cupp*, 414 U.S. at 147.  The Appellate Division's determination that the errors in the trial court's causation instructions were not capable of producing an unjust result was neither contrary to established federal precedent nor an unreasonable application of that precedent.  Because the trial court's instructions held the state to a higher burden of proof, this Court cannot discern that the error in the jury instructions was so invasive to have rendered Petitioner's trial unfair.  Accordingly, relief on this claim is denied.

### b. *Unlawful Purpose*

The Appellate Division considered Petitioner's argument that the jury was not correctly instructed on "unlawful purpose" and denied Petitioner's claim.  The Appellate Division found:

> We turn to consider claims of error raised by [Petitioner] concerning the jury instruction on the "unlawful purpose" element of N.J.S.A. 2C:39–4d [Possession of weapons for unlawful purposes.] . . .
>
> In pertinent part, the judge gave the jurors the following direction:
>
>> If you find that the Defendant had a lawful purpose, for example, to use the knife to protect himself or another against the use of unlawful force or protect his property, if you have a reasonable doubt as to the Defendant's purpose, then the State has failed to carry its burden of proof on this element, beyond a reasonable doubt.
>>
>> I instruct you that for purposes of this offense, if the Defendant honestly believed that he needed to use the knife to protect himself, the law does not require that this belief be reasonable.  In other words, if the Defendant had an honest and unreasonable belief he needed to use the weapon to protect himself, this negates the purposeful mental state required for this offense.
>
> This instruction gives no reason for doubt or concern about whether the jury would have concluded under this instruction, as [Petitioner] argues, that [Petitioner] could be guilty of this crime even if his purpose in possessing the knife was to use it in lawful self-defense. The instruction is a proper application of the legal principle made clear in *Bowens*—that evidence relevant to self-defense may negate an element of a crime.  [*State v. Bowens*, 108 N.J. 622, 632-34 (1987).]
>
> [Petitioner's] argument seems to assume that the jury acquitted him of murder, passion/provocation manslaughter and aggravated manslaughter, because the jury found he acted in self-defense and that he was convicted of reckless manslaughter and other crimes. But that assumption is wholly unwarranted.  The suddenness of Ritch's approach following the unexpected punch from Chavez, could well have led the jury to conclude that the State failed to prove that [Petitioner] caused Ritch's death purposely, knowingly, or

> recklessly under circumstances manifesting extreme indifference to
> human life.

*Davies*, 2014 WL 6474519, at *10-11.

In instructing the jury on the charge of possession of a weapon for an unlawful purpose, the trial court stated that the state must prove beyond a reasonable doubt that: (1) "there was a weapon"; (2) Petitioner "possessed the weapon"; (3) Petitioner "possessed the weapon with the purpose to use it against the person or property of another"; and (4) Petitioner's "purpose was to use the weapon unlawfully." (*See* ECF No. 11-25, N.T. 2/15/11, at 112:6-12.) Petitioner has failed to show how the trial court's instruction that if the jury found that Petitioner "had a lawful purpose, for example, to use the knife to protect himself or another against the use of unlawful force or protect his property, if you have a reasonable doubt as to the Defendant's purpose, then the State has failed to carry its burden of proof on this element, beyond a reasonable doubt" relieved the state of their burden of proof as to an essential element of the charge against Petitioner. *See Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011). As such, Petitioner has failed to show how the jury instruction relevant to possession of a weapon for an unlawful purpose infected his trial resulting in a conviction that violated due process. *Estelle*, 502 U.S. at 72. Petitioner has not made the requisite constitutional showing of due process deprivation or fundamental unfairness to warrant habeas relief on this claim.

### c. *Reasonable Belief*

The Appellate Division denied this claim regarding "reasonable belief" on direct appeal. The state court explained that reasonable belief is an element of reckless homicide and Petitioner was objecting to the use of the term reckless in defining the reasonable belief. *Davies*, 2014 WL 6474519, at *9. The Appellate Division explained that reference to "recklessness and negligence is essential to an understanding of a reasonable belief." *Id.* In New Jersey, the term "'[r]easonably

28

believes' or 'reasonable belief' designates a belief the holding of which does not make the actor reckless or criminally negligent [.]"  N.J.S.A. 2C:1–14j.  Thus, the Appellate Division explained, "recklessness and negligence pertinent to the defendant's belief are always relevant when self-defense is raised."  *Davies*, 2014 WL 6474519, at *9.  The Appellate Division denied Petitioner's claim for the following reasons:

> [Petitioner] contends that an honest belief cannot be unreasonable. But the honesty of a belief depends on nothing other than what the actor in fact believes.  In contrast, the question whether a belief is reasonable or unreasonable depends on whether the actor is reckless or negligent in believing what he honestly believes.  The questions are different.  Under the Code's formulation of self-defense, an honest and mistaken belief can support a claim of self-defense, but that is so only if the honest but mistaken belief is not recklessly or negligently held.

> Stated in terms of the State's burden of proof to disprove a claim of self-defense, the State must prove that defendant's belief in the existence of conditions justifying the force or the amount of force the defendant used to repel the threat was unreasonable—that is, that the belief was either recklessly or negligently held.  If the State proves the unreasonableness of the belief under that standard, then self-defense is out of the case.

> In that circumstance, the evidence establishing an honest but unreasonable belief in the necessity for using defensive force may establish passion/provocation, which mitigates murder to manslaughter, N.J.S.A. 2C:11–4b(2).  Or such evidence may negate—that is, cast a reasonable doubt upon the adequacy of the State's proof of—the purpose or knowledge required for a murder conviction, N.J.S.A. 2C:11–3a(1)–(2), and still permit a finding of the recklessness that is required for a conviction of aggravated or reckless manslaughter, N.J.S.A. 2C:11–4a(1), b(1).  *See Bowens*, *supra*, 108 N.J. at 632–35.  As the Supreme Court has concluded, "in many cases the issues of the reasonableness of the defendant's conduct presented to the jury in defense of the substantive crimes charged will have relevance to the essential elements of the homicidal act: whether it was the actor's conscious object to inflict deadly force, whether death was almost certain to follow, or whether the act was done recklessly or with reasonable provocation."  *Id.* at 634.

> Having considered the arguments [Petitioner] presents in his supplemental brief implicating the objective and subjective components of the "reasonable belief" requirements applicable to self-defense and their relationship to the crimes charged, we conclude that they have insufficient merit to warrant any additional discussion. R. 2:11–3(e)(2).

*Davies*, 2014 WL 6474519, at *9-10.

The Court has explained above that the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." *Smith*, 120 F.3d at 416. Here, Petitioner fails to show or even indicate how the jury instructions on reasonable belief and self-defense lifted the state's burden of proof in showing that Petitioner's claim of self-defense was untrue. The decision of the Appellate Division was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on this claim.

### D.  Ground Four: Inconsistent Verdicts

Petitioner argues in his fourth ground for relief that the trial court erred in convicting him on possession of a weapon by a previously convicted person (count six) in a bifurcated bench trial, when the jury acquitted him of unlawful possession of a weapon (count five). (ECF No. 7, at 30.) Petitioner also appears to argue that it was "legally impossible" for the jury to convict him of possession of a weapon for an unlawful purpose (count four), when they acquitted him of unlawful possession of a weapon (count five). (*Id.*) The jury convicted Petitioner of possession of a weapon for unlawful purpose and acquitted him of unlawful possession of a weapon. *Davies*, 2014 WL 6474519, at *1. The trial court then found Petitioner guilty of possession of a weapon by a convicted person. *Id.*

30

The Appellate Division reviewed this claim on direct appeal and found it meritless.  The Appellate Division explained first that in New Jersey possession of a weapon by a convicted person prohibits "any person previously convicted of certain designated offenses from possessing a weapon. [And, the] term 'weapon' is defined in N.J.S.A. 2C:39–1r as including 'anything readily capable of lethal use or of inflicting serious bodily injury.'"  *Davies*, 2014 WL 6474519, at *13 (citing *State v. Jones*, 198 N.J.Super. 553, 556 (App.Div.1985)).  The state court then reasoned:

> The judge, having heard the evidence presented at trial and having considered the evidence the prosecutor presented to establish [Petitioner's] prior convictions, made findings of fact on the elements of the crime that are amply supported by the record and binding on appeal.  *State v. Locurto*, 157 N.J. 463, 470–71 (1999); *State v. Johnson*, 42 N.J. 146, 161–62 (1964).  [Petitioner's] conviction for this crime does not violate any principle of collateral estoppel.  The judge did not rely on the jury's determination that [Petitioner] was guilty of possessing a weapon with the purpose of using it unlawfully against Ritch to establish [Petitioner's] possession of a knife.  Moreover, the jury's acquittal of [Petitioner] for possessing a knife under circumstances not manifestly appropriate for its use by no means prevented his conviction for a possession of a weapon by a convicted person.  It is simply wrong to contend that the jury determined the State failed to prove that [Petitioner] possessed a weapon.  The jury convicted [Petitioner] of possessing a knife with the purpose of using it unlawfully against the person who tapped him on the shoulder, Ritch, and the jury acquitted [Petitioner] of possessing a weapon under circumstances not manifestly appropriate for its use.

*Id.*

Generally, "inconsistent verdicts are constitutionally tolerable."  *Dowling v. United States*, 493 U.S. 342, 353-54 (1990) (citation omitted).  Challenges to purported inconsistent verdicts are analyzed under the standard articulated by the Supreme Court in *Dunn v. United States*, 284 U.S. 390 (1932).  In *Dunn*, the Court declined to disturb a conviction stemming from a jury verdict just because it was inconsistent with its acquittal on another count.  *See id.* at 393-94; *see also United States v. Powell*, 469 U.S. 57 (1984).  The Supreme Court held that so long as there is sufficient

evidence to sustain the conviction for the charge of which the petitioner has been found guilty, a reviewing court will not disturb the conviction.  *See id.* at 393.

Here, the record demonstrates that the verdict was appropriate.  Petitioner's argument that it was "legally impossible" for the jury to convict him of possession of a weapon for an unlawful purpose when they acquitted him of unlawful possession of a weapon is legally inaccurate. Possession of a weapon for an unlawful purpose provides "any person who has in his possession any weapon, except a firearm, with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the third degree."  N.J.S.A. § 2C:39-4d.  Unlawful possession of a weapon provides "any person who knowingly has in his possession any other weapon [other than a firearm] under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of a crime of the fourth degree."  N.J.S.A. § 2C:29-5d.  In New Jersey the charge of possession of a weapon for an unlawful purpose requires a specific state of mind – the intent to use the weapon unlawfully – whereas, the charge of unlawful possession of a weapon does not require a specific state of mind, but rather focuses on the possession of the weapon itself and whether it was lawfully possessed.  *Compare* N.J.S.A. § 2C:39-4d, *with* N.J.S.A. § 2C:39-5(d). The jury having found the state did not meet their burden to prove Petitioner possessed the knife unlawfully, does not indicate that the jury found Petitioner did not possess the knife with the intent to use it unlawfully.  Therefore, the jury's verdict was not inconsistent.

Furthermore, the trial court did not rely on the jury's finding that Petitioner possessed a weapon when convicting him of possession of a weapon by a previously convicted person.  Rather, the trial court cited to sufficient evidence to sustain Petitioner's conviction for possession of a weapon by a previously convicted person.  The trial court reasoned:

> Count six alleges [Petitioner], Robert Davies, on the 12th of August, 2007, in Margate, within the jurisdiction of the Court, having been

convicted the crime of endangering the welfare of a child, possessed a weapon: Namely, a knife.  The Court received Exhibits 72, contains in it, Judgment of conviction entered by Superior Court on May 26, 2000 with respect to a violation of endangering the welfare of a child, which he received a prison sentence.  It does appear that that element of the offense has been satisfied, beyond a reasonable doubt.

Additionally, based on the totality of all the evidence in this case, I infer from the stab wounds upon Mr. Laverne Ritch as well as the actions of the [Petitioner] on the night in question in reaching for his side that he was in possession of a weapon: Namely a knife.  I further infer that it was a knife, beyond a reasonable doubt.  I find from the nature of the wounds suffered by the victim in this case.  As such the Court will enter a finding of guilty on Count six with respect to possession of a weapon, a knife, by a person previously convicted of disqualifying offense.

(ECF No. 11-26, N.T. 2/16/11, at 9:5 to 10:1.)

Endangering the welfare of a child is one of the previous offenses enumerated in N.J.S.A. § 2C:39-7a, titled Certain Persons Not to Have Weapons.  In New Jersey a weapon is defined as "anything readily capable of lethal use or of inflicting serious bodily injury."  N.J.S.A. § 2C:39-1r.  The trial court explicitly found Petitioner possessed a weapon, a knife, and that he had been previously convicted of endangering the welfare of a child.  As noted above, the jury did not find that Petitioner did not possess a weapon.  Petitioner's acquittal for unlawful possession of a weapon is not inconsistent with the trial court's verdict that Petitioner possessed a weapon as a previously convicted person. Additionally, the trial court relied on sufficient evidence to support the verdict. *Dunn*, 284 U.S. at 393-4.

Petitioner cannot demonstrate the state court's adjudication was an unreasonable application of clearly established federal law.  Thus, Petitioner's claim is denied.

33

### E.  Ground Five:  Prejudicial Summation

Petitioner argues in his fifth ground for habeas relief that the prosecutor's summation remarks implied Petitioner is a racist and prejudiced him.  (ECF No. 7, at 31.) Petitioner refers to the prosecutor's remarks that Mario Chavez was a Mexican and that it implied this was a hate crime.  (*Id.*)

On direct appeal, the Appellate Division rejected Petitioner's claim that the prosecutor's closing argument was a basis for reversal of Petitioner's conviction.  The state court explained that relief is warranted only when the argument was "so egregious that it deprived [the] defendant of a fair trial."  *Davies*, 2014 WL 6474519, at *13 (citing *State v. DiFrisco*, 137 N.J. 434, 474 (1994) (quoting *State v. Pennington*, 119 N.J. 547, 575 (1990)), cert. denied, 516 U.S. 1129 (1996)).  The Appellate Division found Petitioner's claim meritless, explaining the following:

> In his pro se supplemental brief, [Petitioner], focusing on the same passage of the summation as his attorney does, argues that the prosecutor's argument was egregious because it painted [Petitioner] as a racist and invited a conviction on that basis.  While the argument may have come close to or crossed the "line that separates forceful from impermissible closing argument," *State v. Rose*, 112 N.J. 454, 518 (1988), viewed in the context of the trial and [Petitioner's] opening statement addressing the national origins of Chavez and his companions and their concoction of a plan to hunt him down, we cannot conclude that is was sufficiently "egregious" to deprive [Petitioner] of a fair trial.

*Id.*

Here, the state court's decision was not an unreasonable application of clearly established federal law.  The Supreme Court has held that for a prosecutor's remarks to rise to the level of a constitutional violation, they must "so infect the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Robinson v. Johnson*, No. 15-8097, 2018 WL 2859672, at *9–10 (D.N.J. June 11, 2018).  It is not

enough that the comments are inappropriate, undesirable, or worthy of "universal condemnation." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Lemons v. Warren*, No. 12-2355, 2015 WL 1497330, at *19 (D.N.J. Apr. 1, 2015). The court must consider the comments in the context of the entire trial, by assessing the language's severity, the effect of any curative instructions, and the nature and quantity of the evidence against the defendant. *United States v. Fulton*, 837 F.3d 281, 306 (3d Cir. 2016).

In the present case, although the prosecutor's comments referring to Mario Chavez as a Mexican and that Petitioner was going to "kill a Mexican that night" were inappropriate, Petitioner's own remarks in opening statement referred to Mexicans. During opening statements, Petitioner submitted that after Mario Chaves punched "big white guy," the "big white guy" chases and "is trying to catch Mario Chavez," and "all other Mexicans take off after the big white guy." (ECF No. 11-14, N.T. 1/26/11, at 62:19-63:1.) Petitioner stated "[s]o the gang of Mexicans are chasing the big white guy" and "you have three or four Mexicans chasing the big white guy" and "one very big light skinned black guy . . . who's running stride for stride with the Mexicans." (*Id.*, at 63:24 to 64:5.)

Considering the prosecutor's remarks in the context of the entire trial, the Court finds the remarks did not so infect the trial with unfairness. *See Fulton*, 837 F.3d at 306. The state court's holding regarding these claims was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent. Furthermore, the decision was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceeding. Thus, Petitioner is not entitled to habeas relief on his fifth ground for relief.

**F.  Ground Six: Ineffective Assistance of Standby Counsel**

In his sixth ground for relief, Petitioner claims trial counsel was ineffective for not obtaining an expert to evaluate Petitioner for a diminished capacity defense.  (ECF No. 7, at 33-34.)  Petitioner claims he requested standby counsel hire an expert and he was told that because he was proceeding *pro se*, he had to use Dr. Daniel P. Greenfield, M.D.  (*Id.*, at 33.)  Petitioner did not want to use Dr. Greenfield because of a prior experience with him and because his report focused on insanity and rendered no opinion on diminished capacity.  (*Id.*)  Petitioner requested an alternate expert and standby counsel informed Petitioner that Petitioner would have to retain an expert himself.  (*Id.*)

Petitioner raised this claim on collateral appeal.  The Appellate Division denied that claim finding it was "without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2)."  *Davies*, 2018 WL 3484106, at * 3.  The Appellate Division agreed with the PCR court's finding that Petitioner "failed to demonstrate the performance of his trial counsel was substandard or that, but for any alleged errors, the result would have been different," and affirmed the PCR court for substantially the same reasons.  *Id.*, citing *Strickland v. Washington*, 466 U.S. 668 (1984).  The Appellate Division summarized the PCR court's opinion regarding this claim as follows:

> The judge explained that no ineffective assistance claim will lie for events occurring during the period in which [Petitioner] acted as his own counsel.  *See State v. Ortisi*, 308 N.J. Super. 573, 588 (App. Div. 1998).  The judge further found it was [Petitioner's] obligation to secure an expert witness, if one was desired, not stand-by counsel's.  The judge also noted the correspondence in the record regarding [Petitioner's] rejection of the expert the Office of the Public Defender retained on [Petitioner's] behalf and that Office's clear direction to [Petitioner] that it was his "obligation to identify, select and negotiate with the experts [he] want[s] to testify."  The judge found choosing and working with an expert was a matter of trial strategy, not trial procedure, and one of the responsibilities [Petitioner] assumed when he determined to represent himself.

*Id.*, at *2.

It is well-settled that a criminal defendant has a Sixth Amendment right to represent himself. *See Faretta v. California*, 422 U.S. 806, 819 (1975). The court may appoint standby counsel when a defendant voluntarily and knowingly asserts his right to self-representation, however, there is no constitutional right to the appointment of standby counsel or a right to "hybrid representation" by a *pro se* defendant and standby counsel together. *See McKaskle v. Wiggins*, 465 U.S. 168, 176, 183 (1984). "A defendant does not have a constitutional right to choreograph special appearances by counsel." *Id.*, at 183. Nor does any constitutional claim arise from the ineffectiveness of standby counsel, because there is "no constitutional right to standby counsel." *See United States v. Tilley*, 326 F. App'x 96, 96-97 (3d Cir. 2009) (citing *McKaskle*, 465 U.S. at 178). "'[W]ithout a constitutional right to standby counsel, a defendant is not entitled to relief for the ineffectiveness of standby counsel.'" *United States v. Oliver*, 630 F.3d 397, 414 (5th Cir. 2011) (quoting *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998)); *see also Abbott v. Gigliott*, No. 08-1310, 2010 WL 411830, at *4 (W.D. Pa. Jan 28, 2010), aff'd, 457 F. App'x 103 (3d Cir. 2012).

Here, Petitioner argues that standby by counsel was ineffective for not hiring an additional expert witness while Petitioner was representing himself *pro se*. At the time Petitioner requested standby counsel obtain a different expert for him, Petitioner had waived his right to counsel. Since there is no constitutional right to standby counsel, Petitioner cannot show a deprivation of effective assistance. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (finding where there is no constitutional right to counsel, there can be no deprivation of effective assistance.) Therefore, the Appellate Division's decision

is neither contrary to, nor an unreasonable application of, Supreme Court precedent and the Court will deny Petitioner's sixth ground for habeas relief.

### G.  Ground Seven: Sentencing and Ex Post Facto Clause

In his seventh and final ground for habeas relief, Petitioner argues that his sentence is in violation of the Ex Post Facto Clause of the United States Constitution.  (ECF No. 7, at 36.) Petitioner claims that when the trial court imposed an eighty-five percent parole ineligibility period pursuant to the No Early Release Act ("NERA") it violated his right to be free from an ex post facto enhancement.  (*Id.*)  Petitioner argues that the NERA was not enacted into law until June 9, 1997 and the extended-term portion of his sentence was imposed via the "community supervision for life" statute based on conduct which occurred on May 13, 1997.  (*Id.*)

Respondents argue that Petitioner has failed to exhaust this claim and is now barred from doing so.  (ECF No. 11, at 26-27.)  Respondents submit that while Petitioner raised this claim in his *pro se* supplemental brief to the PCR court, he was required to raise his sentencing argument either in his initial direct appeal from conviction or his subsequent sentencing appeal following his re-sentencing and he failed to do so.  (*Id.*, at 27.)  Thus, Respondents argue Petitioner was barred from asserting the claim as a ground for post-conviction relief.  (*Id.*, citing N.J. Ct. R. 3:22-4(a)(1).)

The Court need not determine if Petitioner's seventh ground for relief is exhausted, because if a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2).  *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject

claims on the merits even though they were not properly exhausted, and we take that approach here").  As such, the Court will address the merits of Petitioner's ex post facto claim.

The Constitution prohibits the federal and state governments from passing any "ex post facto Law."  *See* U.S. Const. art. 1, § 9, cl. 3, *id.* at § 10, cl. 1 (hereinafter the "Ex Post Facto Clause").  An ex post facto law is one "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."  *See United States v. Brady*, 88 F.3d 225, 227 (3d Cir. 1996), *cert. denied*, 519 U.S. 1094 (1997) (quoting *Cummings v. Missouri*, 4 Wall. 227, 325–26 (1866)).  The Ex Post Facto Clause is therefore implicated when a law "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts."  *Collins v. Youngblood*, 497 U.S. 37, 43 (1990) (citations omitted); *accord California Dept. of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995).

At Petitioner's resentencing, the trial judge granted the state's motion for a mandatory extended term for person serving a special sentence pursuant to N.J.S.A. 2C:43-6.4e and sentenced Petitioner to twenty-years' imprisonment for reckless manslaughter (count three), subject to the NERA eighty-five percent parole ineligibility period.  (*See* ECF No. 11-3, at 1.)  The trial court found that imposition of the extended term was imposed under N.J.S.A. 2C:43-6.4e based on Petitioner being convicted of reckless manslaughter while serving a special sentence of community supervision for life.  (*Id.*, at 4.)  Petitioner was serving a special sentence of community supervision for life based on a May 26, 2000 conviction in Cape May County for Child Endangerment.  (*Id.*)

Petitioner argues that the Ex Post Facto Clause was violated when the trial court imposed a NERA eighty-five percent parole ineligibility period on his extended term sentence because the extended term sentence is based on conduct that occurred prior to the enactment of the NERA.  (*Id.*)  Petitioner appears to think that the NERA eighty-five percent parole ineligibility period was

given on his 1997 conduct.  Petitioner is mistaken and his argument is meritless.  Although Petitioner's sentence on his reckless manslaughter conviction included an enhancement based on past conduct, it was merely an enhanced punishment for his new crime and not a punishment on his old crime.  The NERA eighty-five percent parole ineligibility period was given on his sentence for reckless manslaughter and did not alter Petitioner's punishment for his old crimes.  Petitioner was sentenced in accordance with the state law in effect at the time of his conduct relevant to reckless manslaughter.  As such, there is no ex post facto violation here and Petitioner is not entitled to relief on this claim.

## III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Thus, no certificate of appealability shall issue.

## IV.  CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.  An appropriate Order follows.

Dated:

*Karen M. Williams*

—————————————
**Hon. Karen M. Williams,**
**United States District Judge**